UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

CHARLES CLARK, et al.,          :
                                :   NO. 1:05-CV-00725
          Plaintiffs,           :
                                :
    v.                          :
                                :   **OPINION AND ORDER**
W & M KRAFT, Inc., et al.,      :
                                :
          Defendants.           :


          This matter is before the Court on Defendant Consolidated
Grain and Barge Company's Motion for Summary Judgment (doc. 70),
Plaintiffs' Response in Opposition (doc. 87), and Defendant's Reply
(doc. 95).  The Court held a hearing on Defendant's motion on
December 20, 2006.

          There are also a number of other pending motions before
the Court in this matter: Defendant W & M Kraft, Inc.'s Motion for
Summary Judgment (doc. 59), Plaintiffs' Response (doc. 65), and
Defendant's Reply (doc. 69); Defendant  Kraft's Motion for Summary
Judgment on Plaintiff Kelly Clark's, as Natural Guardian of C.A.C.,
Loss of Consortium Claim (doc. 96), DB Industries, Inc.'s Joinder
in W & M Kraft, Inc.'s Motion for Summary Judgment (doc. 98),
Plaintiffs' Response (doc. 105), and Defendant's Reply (doc. 105);
Defendant Ingram Barge Company's Motion for Summary Judgment (doc.
101), Plaintiffs' Response (doc. 107), and Defendant's Reply (doc.
111); DB Industries, Inc.'s Motion for Summary Judgment (doc. 102),
Plaintiffs' Response (doc. 106), and Defendants' Reply (doc. 110).

For the reasons indicated herein, the Court DENIES Consolidated Grain and Barge Company's Motion for Summary Judgment (doc. 70), DENIES W & M Kraft, Inc.'s Motion for Summary Judgment (doc. 59), GRANTS W & M Kraft, Inc.'s Motion for Summary Judgment on C.A.C.'s Loss of Consortium Claim (doc. 96), DENIES Ingram Barge Company's Motion for Summary Judgment (doc. 101), and DENIES DB Industries, Inc.'s Motion for Summary Judgment (doc. 102).

## I. BACKGROUND

This case involves claims against multiple Defendants as a result of Plaintiff Charles Clark's fall while employed by Consolidated Grain and Barge ("CGB") from a "cell tower" onto a barge in the Ohio River, on December 16, 2004 (doc. 22). Mr. Clark's fall resulted in severe injuries that have caused him great suffering and have required him to incur substantial medical expenses (Id.). He and his wife, Kelly Clark, and their minor son, "C.A.C," seek judgment jointly and individually, lost wages past and future, pain and suffering past and future, expenses, court costs, reasonable attorney fees, punitive damages, pre- and post-judgment interest and maritime maintenance and cure (Id.). Plaintiffs' fifteen-count Amended Complaint includes claims under the Jones Act, 46 U.S.C. § 688, the Longshore & Harbor Workers' Compensation Act, ("LHWCA") 33 U.S.C. § 905(b), as well as pendent state law claims for negligence, design defect, failure to warn, and loss of consortium (Id.).

2

Defendant CGB is a Louisiana corporation that operates a grain-handling facility in Cincinnati.  Defendant W & M Kraft, Inc. ("Kraft") is a South Carolina corporation that provided safety consulting services to CGB under a contract from August 2003 to August 2004.  Defendant Ingram Barge Company ("Ingram") is a Tennessee corporation that owned the barge vessel upon which Plaintiff was injured.  Defendant DB Industries, Inc. ("DBI") is a Minnesota corporation that manufactures and sells fall protection devices.  As Plaintiffs are residents of Kentucky, and there is no dispute that the injuries occurred in Ohio, or that the injuries in question surpass the requisite jurisdictional threshold, the Court has both diversity and federal subject matter jurisdiction, as well as pendent jurisdiction over the state claims.  28 U.S.C. §§ 1332, 1333, et seq.

Defendant CGB's Motion for Summary judgment is premised on the theory that Charles Clark does not qualify as a Jones Act seaman as a matter of law, but rather qualifies as a longshoreman (doc. 70).  Therefore, in CGB's view, Charles Clark is only entitled to benefits it has already provided him under the LHWCA, 33 U.S.C. §§ 901, et seq. (Id.).  At the hearing, Defendant argued that Clark cannot prove he had a substantial connection to a vessel of navigation or to an identifiable fleet, as his employment status was that of a general laborer.

Defendant Kraft brings two motions for summary judgment.

3

In its first motion, it argues that it owed no duty to Plaintiffs and that in its view, there is no causal link between its provision of safety consulting services to CGB and Charles Clark's accident (doc. 59). Its second motion attacks the consortium claim brought on behalf of the Clarks' minor son, "C.A.C.," because the child was not yet conceived at the time of the accident (doc. 98).

Defendant Ingram argues it is entitled to summary judgment because, for all the reasons raised by CGB, Charles Clark does not qualify as a seaman. Ingram argues that even should Clark so qualify, he cannot pursue a claim for unseaworthiness against Ingram because Clark was not the member of a crew of any Ingram vessel. Should the Court determine that Clark may pursue a claim for unseaworthiness, Ingram argues Plaintiffs cannot establish any unseaworthy condition that proximately caused or substantially contributed to Clark's injury. Finally, Ingram argues that Plaintiffs' claims for loss of consortium against Ingram are not recognized under general maritime law.

The final motion is brought by DBI, the manufacturer of a self-retracting lifeline device at the top of the cell tower from which Plaintiff fell. Plaintiff alleges that he climbed the cell tower without the protection of a safety cable, because the cable had retracted to the top of the tower, and there was no safe way provided to retrieve it. In its motion for summary judgment, DBI, argues that Plaintiffs have failed to offer any evidence of design

or manufacturing defect, nor to establish a genuine issue of material fact regarding a failure to warn claim. As such, DBI argues, it is entitled to summary judgment on the product liability claims against it.

Plaintiffs responded to each of the pending motions, arguing that genuine issues of material fact preclude judgment for the Defendants. Specifically, Plaintiffs argue that a jury could find ample evidence to support the conclusion that Charles Clark was a Jones Act seaman, and that the collective negligence of all the Defendants contributed to Plaintiffs' injuries. This matter is now ripe for the Court's consideration.

## II. APPLICABLE LEGAL STANDARD

Although a grant of summary judgment is not a substitute for trial, it is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56; see also, e.g., Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464 (1962); LaPointe v. United Autoworkers Local 600, 8 F.3d 376, 378 (6th Cir. 1993); Osborn v. Ashland County Bd. of Alcohol, Drug Addiction and Mental Health Servs., 979 F.2d 1131, 1133 (6th Cir. 1992) (per curiam). In reviewing the instant motion, "this Court must determine whether the evidence presents a sufficient disagreement

5

to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Patton v. Bearden, 8 F.3d 343, 346 (6th Cir. 1993), quoting in part Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-252 (1986) (internal quotation marks omitted).

The process of moving for and evaluating a motion for summary judgment and the respective burdens it imposes upon the movant and the non-movant are well settled. First, "a party seeking summary judgment. . . bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact [.]" Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); see also LaPointe, 8 F.3d at 378; Guarino v. Brookfield Township Trustees, 980 F.2d 399, 405 (6th Cir. 1992); Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989). The movant may do so by merely identifying that the non-moving party lacks evidence to support an essential element of its case. See Barnhart v. Pickrel, Schaeffer & Ebeling Co., L.P.A., 12 F.3d 1382, 1389 (6th Cir. 1993).

Faced with such a motion, the non-movant, after completion of sufficient discovery, must submit evidence in support of any material element of a claim or defense at issue in the motion on which it would bear the burden of proof at trial, even if

the moving party has not submitted evidence to negate the existence of that material fact. <u>See</u> <u>Celotex</u>, 477 U.S. at 317; <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242 (1986). As the "requirement [of the Rule] is that there be no genuine issue of <u>material</u> fact," an "alleged factual dispute between the parties" as to some ancillary matter "will not defeat an otherwise properly supported motion for summary judgment." <u>Anderson</u>, 477 U.S. at 247-248 (emphasis added); <u>see</u> <u>generally</u> <u>Booker v. Brown & Williamson Tobacco Co., Inc.</u>, 879 F.2d 1304, 1310 (6th Cir. 1989). Furthermore, "[t]he mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." <u>Anderson</u>, 477 U.S. at 252; <u>see also</u> <u>Gregory v. Hunt</u>, 24 F.3d 781, 784 (6th Cir. 1994). Accordingly, the non-movant must present "significant probative evidence" demonstrating that "there is [more than] some metaphysical doubt as to the material facts" to survive summary judgment and proceed to trial on the merits. <u>Moore v. Philip Morris Cos., Inc.</u>, 8 F.3d 335, 339-340 (6th Cir. 1993); <u>see also</u> <u>Celotex</u>, 477 U.S. at 324; <u>Guarino</u>, 980 F.2d at 405.

Although the non-movant need not cite specific page numbers of the record in support of its claims or defenses, "the designated portions of the record must be presented with enough specificity that the district court can readily identify the facts upon which the non-moving party relies." <u>Guarino</u>, 980 F.2d at 405,

7

quoting <u>Inter-Royal Corp. v. Sponseller</u>, 889 F.2d 108, 111 (6th Cir. 1989) (internal quotation marks omitted). In contrast, mere conclusory allegations are patently insufficient to defeat a motion for summary judgment. See <u>McDonald v. Union Camp Corp.</u>, 898 F.2d 1155, 1162 (6th Cir. 1990). The Court must view all submitted evidence, facts, and reasonable inferences in a light most favorable to the non-moving party. See <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986); <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144 (1970); <u>United States v. Diebold, Inc.</u>, 369 U.S. 654 (1962). Furthermore, the district court may not weigh evidence or assess the credibility of witnesses in deciding the motion. See <u>Adams v. Metiva</u>, 31 F.3d 375, 378 (6th Cir. 1994).

Ultimately, the movant bears the burden of demonstrating that no material facts are in dispute. See <u>Matsushita</u>, 475 U.S. at 587. The fact that the non-moving party fails to respond to the motion does not lessen the burden on either the moving party or the Court to demonstrate that summary judgment is appropriate. <u>See Guarino</u>, 980 F.2d at 410; <u>Carver v. Bunch</u>, 946 F.2d 451, 454-455 (6th Cir. 1991).

## III. ANALYSIS

## A. Defendant CGB's Motion for Summary Judgment (doc. 70)

The fundamental question posed by Defendant CGB's motion is whether Plaintiff has raised a genuine issue of material fact, such that a jury could determine he qualifies as a seaman under the

8

Jones Act, 46 U.S.C. § 688.  The Jones Act is "remedial legislation enacted for the protection and benefit of the seamen," and "is entitled to a liberal construction to accomplish its beneficent purposes." Daughenbaugh v. Bethlehem Steel Corp., Great Lakes S.S. Div., 891 F.2d 1199, 1204 (6th Cir. 1989)(quoting Cosmopolitan Shipping Co. v. McAllister, 337 U.S. 783, 790 (1949)).

The issue of seaman status "is a mixed question of law and fact, and it often will be inappropriate to take the question from the jury." Harbor Tug & Barge Co. v. Papai, 520 U.S. 548, 554 (1997).  "[E]ven marginal claims are properly left for jury determination." Daughenbaugh, 891 F.2d at 1205 (citations omitted).  However, the fact that seaman claims are ordinarily decided by the trier of fact does not preclude summary judgment on the question of seaman status where the record reveals no evidence from which reasonable persons might draw conflicting inferences on any of the elements of the seaman test. Bernard v. Binnings Const. Co., Inc., 741 F.2d 824, 828 (5th Cir. 1984).

With these principles in mind, the Court must evaluate whether Plaintiffs have proffered sufficient evidence such that a fact-finder could conclude Charles Clark was a seaman because 1) his duties contributed to the function of a vessel or to the accomplishment of its mission, and 2) he had a connection to a vessel in navigation, or to an identifiable group of such vessels, that was substantial in terms of both its nature and duration.

9

<u>Chandris, Inc. v. Latsis</u>, 515 U.S. 347, 368 (1995).  At the December 20, 2006 hearing, Defendant CGB conceded that Charles Clark's duties contributed to the function of a vessel, but challenged Plaintiffs' ability to 1) establish the existence of an identifiable fleet of vessels, 2) show that his work aboard the barges was of a substantial nature, and 3) establish that he spent at least thirty percent of his time in service of a vessel or a fleet of vessels.  CGB argued that at all times relevant it is important to note that "Mr. Clark was hired and working for CGB as a general laborer."  For all of these reasons, Defendant argues that Mr. Clark does not qualify as a seaman under the second prong of the <u>Chandris</u> framework.  The Court will address Defendant's arguments seriatim.

### 1.  An Identifiable Fleet

Defendant argued at the hearing that as a terminal operator that manages the loading of barges delivered to it, it does not control such barges as an identifiable fleet.  Defendant argues the choice of which barges come to CGB is up to the barge owner, and not CGB, so that Mr. Clark's presence on any one of the barges is completely random.  Over the course of Clark's employment, argues Defendant, some 396 different barges were delivered for loading, none of which share a connection to one another, and most of which will probably never return to CGB.  Under these facts, argues CGB, there is no indication that the

10

barges acted together and under one control, and therefore they cannot be considered an identifiable fleet as a matter of law.

Plaintiffs responded that the fact that CGB can identify 396 barges establishes the existence of an identifiable group of vessels.  Under <u>Harbor Tug</u>, 520 U.S. 548, argues Plaintiffs, the operative question is whether Defendant exercised control over the vessels, and the facts here do indeed show such control.  After the barges were delivered to CGB, Plaintiffs argue CGB assumed complete control over them––deciding "where to move them, what to put in them, how long to keep them, when to load them, what needed to be repaired. . . .[a]ll of that control was done by CGB."

The Court finds well-taken Plaintiffs' position that a jury could find CGB exercised control over an identifiable fleet of barges.  The record shows that no one else controlled the barges while CGB managed their movement and loaded them.  The record further shows that CGB performed more than an isolated task on each vessel, but rather inspected each vessel, cleaned and/or pumped out water as necessary, loaded, leveled, and covered the cargo, and secured and moved the vessels with a cable and winch system.  Accordingly, the Court rejects Defendant's arguments that it is entitled to summary judgment on the basis that there was no identifiable fleet of vessels over which CGB exercised control.

### 2.  Work of a Substantial Nature

Defendant next argued that Plaintiffs cannot establish

11

that Charles Clark's duties were of a substantial nature because he was not subjected to the perils of the sea.  In Defendant's view, Clark's work was all on barges adjacent to mooring cells at the CGB facility, such that Clark was not faced with the threat of abandoning ship or delays in medical care, but rather, he could depart the barges at any time for any reason.  Defendant argued further that Clark's exposure to the elements would have been the same whether he was on a barge or on the land performing his general labor duties.

Plaintiffs responded that Clark was certainly subjected to the perils of the sea.  According to Plaintiffs, the fact of the matter is that Clark fell over board once, and another time he was knocked down on the barge deck when a boat collided with the barge.  These facts, argue Plaintiffs, show that Clark was subjected to perils of the sea.  The Court agrees that a jury could conclude likewise.

### 3.  Work of a Substantial Duration

Defendant argued at the hearing that according to Mr. Clark's deposition testimony, he only worked five percent of his time on the barges while preparing them for loading.  Citing Chandris, Defendant contends that "a worker who spends less than about thirty percent of his time in the service of a vessel in navigation should not qualify as a seaman under the Jones Act." 515 U.S. at 371.  Defendant next argued that Clark's affidavit

12

submitted in opposition to its summary judgment motion contradicts his deposition testimony and thus should be disregarded under Sixth Circuit precedent.

Plaintiffs responded that Defendant takes his deposition testimony out of context, that the thirty minutes he devoted to preparing barges for loading represented only a fraction of the time he spent on barges completing a host of other duties. Plaintiffs further argue that his affidavit was properly submitted within thirty days of the completion of his deposition, such that his representation that he worked half of his time on the barges should not be disregarded. Moreover, Plaintiffs argued that Defendant completely ignored the affidavit of Phillip Ramey, who trained and worked with Mr. Clark, and who indicated that Mr. Clark "spent at least approximately half his time on barges." Finally, Plaintiffs argue that neither the <u>Chandris</u> court nor the Fifth Circuit have ever stated that if a worker spends less than thirty percent of his time on a vessel he loses, but rather, such case law indicates if a worker does meet the thirty percent threshold, his case should go to a jury.

Having reviewed this matter, the Court finds Plaintiffs' arguments persuasive. Clearly there is a dispute of fact as to the amount of time Mr. Clark spent in service of barges. The Court is not impressed by Defendant's argument that Charles Clark's

13

affidavit or deposition errata sheet were improperly submitted,[1] nor by Defendant's failure to acknowledge the affidavit testimony of Phillip Ramey. Finally, the Court agrees with Plaintiffs' interpretation of the <u>Chandris</u> decision, which stated that the thirty percent rule of thumb "serves as no more than a guideline. . .and departure from it will certainly be justified in appropriate cases." 515 U.S. at 371. Accordingly, the Court rejects Defendant's argument that it is entitled to summary judgment under the theory that Mr. Clark clearly had an inadequate temporal connection to the barges upon which he worked.

### 4. Mr. Clark's Job Title

As a final matter, the Court addresses Defendant's argument that Mr. Clark was hired as a general laborer. Defendant argued at the hearing that the fact Plaintiffs will refer to Mr. Clark as a "deckhand" is insufficient to qualify him as a seaman, because under <u>Harbor Tug</u>, 520 U.S. 548, a job title is insufficient to qualify a worker for such status.

Plaintiffs responded that Defendant's own records refer to Mr. Clark as a "deckhand." Plaintiffs proffered an insurance enrollment form, training records, and a CGB accident investigation report, all of which refer to Mr. Clark as deckhand and not as a

---

[1] The docket sheet in this matter shows that Mr. Clark's deposition was conducted in three successive sessions, on May 2, 2006, July 25, 2006, and September 13, 2006 (docs 72, 73, 116). Defendant imposes an unreasonable condition that errata sheet be submitted prior to the ultimate end of deposition testimony.

general laborer.  Plaintiffs indicated that they agreed that a job title is insufficient to confer seaman status, but argued that the fact Defendant referred to Mr. Clark as a deckhand should be relevant to the inquiry.

Regardless of Mr. Clark's title, for the reasons already indicated above, the Court finds Plaintiffs have proffered adequate evidence such that a reasonable jury could find Mr. Clark qualifies as a seaman.  The Court agrees the fact that Defendant referred to Mr. Clark as a deckhand is relevant evidence that the jury can consider as it makes its factual determinations.  The Court therefore DENIES CGB's Motion for Summary Judgment (doc. 70).

## B.  Defendant Kraft's Motion for Summary Judgment (doc. 59)

Defendant Kraft argues it is entitled to summary judgment because it owed no duty to Plaintiffs and because there is no causal link between its actions and Mr. Clark's injuries (doc. 59). Kraft had a consulting agreement with CGB to provide safety assessment and training services from August 2003 to August 2004 (Id.).  Kraft argues its contract involved providing assessments to management, not employees, and that its safety program had nothing to do with an assessment of CGB's facilities (Id.).  Kraft argues it developed an employee training course in conjunction with CGB, intended to help employees "assess their risk, help each other out, coach each other, and accept accountability to follow rules and procedures, good practices, and regulations" (Id.).  Kraft argues

15

that the only duties it had were specific and limited by its contract with CGB—and that it had no duties toward Plaintiff, who its trainer never met (Id.).  Even if it had a duty toward Plaintiff, Kraft argues, there is no proximate cause between its risk assessment analysis services and Clark's fall (Id.).  Finally, Kraft argues that CGB's claim against it for indemnification fails, as the Consulting Agreement between the parties included an indemnity clause stating each party would hold one another harmless from and against all claims arising out of the performance of the Consulting Agreement (Id.).

Plaintiffs respond that under the Restatement 2d of Torts § 324A, where one party performs services for another that involve the protection of a third person, the party can be liable to the third person if those services are negligently performed (doc. 65). Plaintiffs argue that because Kraft's work was so inadequate, Mr. Clark was unprepared to recognize and overcome the unsafe conditions that caused his fall (Id.).  Plaintiffs also argue that they have a claim against Kraft sounding in contract, as Mr. Clark was an intended third-party beneficiary to the Consulting Agreement between the Defendants (Id.).

Plaintiffs further argue that Kraft was hired to do more than give a general view about safety, that Mr. Kraft visited CGB's Cincinnati facility twice, and they proffer deposition testimony showing that his contractual role included site visits where he

16

would take photos of problems to be rectified (<u>Id</u>.).  Despite these visits, Plaintiffs argue, Kraft never looked at the focal point of CGB's operations, and none of his manuals or training presentations contained any training on fall protection (<u>Id</u>.).  Plaintiffs cite to <u>Santillo v. Chambersburg Engineering Co.</u>, 603 F. Supp. 211 (E.D. Pa. 1985) in which the Court applied Section 324A and found that safety concerns by their nature involve consideration of protection of third parties, such that safety consultants had a duty to employees (<u>Id</u>.).  As for proximate cause, Plaintiffs argue that a finder of fact could conclude that Kraft failed in its duty to make the CGB facility a safe work environment, and that such failure contributed to Mr. Clark's accident (<u>Id</u>.).  In summary, Plaintiffs argue there are too many factual questions that preclude summary judgment (<u>Id</u>.).

Kraft replies that its duties were grounded in its contract, the provisions of which did not include inspection of CGB equipment (doc. 69).  It argues that <u>Santillo</u> is distinguishable, because the contract in that case clearly included a duty to inspect the machine that ultimately injured the plaintiff (<u>Id</u>.). Here, Kraft argues, the situation is more analogous to another case interpreting Section 324A, <u>Blewitt v. Man Roland, Inc.</u>, 168 F. Supp 2d 466 (E.D. Pa. 2001), in which the Court stated that "the mere making of a safety recommendation does not establish [a duty to a third party]" (<u>Id</u>.).  Put another way, argues Kraft, simply by

17

doing a safety consultation, it did not assume all the duties that the employer had toward its employees (Id.).

Kraft argues that its contractual obligations were to coach management to *think* about safety and to teach systems and processes to achieve safe operations (Id.). Its contract did not require that Kraft perform a safety audit of CGB's facilities (Id.). Finally, Kraft argues Plaintiffs did not plead the theory in their Complaint that Mr. Clark was a third-party beneficiary to their contract, and therefore, the Court would err to allow Plaintiffs to defeat summary judgment based on such a theory (Id.). Even if the Court would consider such argument, Kraft argues it fails because the contract does not specifically identify Mr. Clark as an intended beneficiary (Id.).

Having reviewed this matter, the Court finds that a reasonable jury could conclude that Kraft's safety consulting services failed to trigger remedial action that could have protected Mr. Clark. The Court finds the facts in this case closer to those in Santillo v. Chambersburg Engineering Co., 603 F. Supp. 211 (E.D. Pa. 1985) than to those in Blewitt v. Man Roland, Inc., 168 F. Supp. 2d 466 (E.D. Pa. 2001), such that Kraft could be liable under Section 324A of the Restatement of Torts. Kraft did more here than merely make a safety recommendation, but its agent conducted site visits and prepared safety materials with CGB. Under these circumstances, where evidence in the record shows that

18

CGB workers were regularly climbing the hazardous cell towers without any fall protection, and where Mr. Clark's accident occurred within only a matter of weeks after Kraft's safety work, the Court finds it inappropriate to take the question of Kraft's liability away from a jury.

## C.  Defendant Kraft's Motion for Summary Judgment on C.A.C.'s Claims for Loss of Consortium (doc. 96).

Defendant Kraft moves for summary judgment on the claims brought by the Clarks' child "C.A.C." who was not conceived until after Mr. Clark fell (doc. 96).  Defendants DBI and Ingram join in the motion (docs. 98, 101).  Defendants state that it was unable to find an Ohio or federal case on the question of whether a child who was not conceived at the time an injury occurs has a claim for loss of consortium, but found two separate courts interpreting Massachusetts law and Louisiana law respectively, both of which rejected claims by such children (doc. 96, citing Lareau v. Page, 39 F.3d 384, 390 (1st Cir. 1994), Mason v. Luther, 903 So.2d 1145, 1149 (La. Ct. App. 2005)).

Plaintiffs respond that this Court must predict what the Ohio Supreme Court would do to answer the question, and not look to Massachusetts or Louisiana.  Plaintiffs argue that the Ohio Supreme Court has stated that a "child's loss of parental consortium must be joined with the injured parent's claim whenever feasible." (doc. 105, citing Coleman v. Sandoz Pharmaceuticals Corp., 74 Ohio St. 3d 492, 494 (1996)).  Plaintiffs argue further that unlike some

19

jurisdictions, Ohio allows for "preconception torts," by which a child may recover for an injury that occurred to parents before the child was conceived (Id. citing Grover v. Eli Lily and Co., 63 Ohio St. 3d 756, 758-59 (1992)).  Plaintiffs argue under Ohio's wrongful death statute, any child conceived prior to decedent's death and who is born alive after decedent's death, is a part of the class of beneficiaries (Id. citing Ohio Rev. Code § 2125.02).  Consequently, argue Plaintiffs, it would be an anomalous result to find the child entitled to benefits under the law only if the injury would lead to death.

Kraft replies that loss of consortium claims accrue when the claimant learns of the loss, so that there would be limitless liability against a defendant so long as the victim of a tort kept reproducing (doc. 108).  Kraft argues that Ohio courts have limited the right of a spouse who was not married at the time of the other spouses's injury from bringing a loss of consortium claim (Id.).  Kraft argues that in Grover, the Ohio Supreme Court rejected the consortium claim of a child conceived subsequent to a tort as too attenuated (Id.).  Finally, Kraft argues that wrongful death claims are distinguishable from loss of consortium claims.  Wrongful death claims, argue Kraft, are actionable if the death occurs after the child was conceived but prior to birth (Id.).  The claim here is based on an alleged tort that occurred prior to conception and not just prior to birth (Id.).

Having reviewed this matter, the Court finds well-taken Defendants' position that in the light of the result in <u>Grover</u>, 63 Ohio St. 3d 756, 591 N.E. 2d 696, and other case law, the Ohio Supreme Court would not allow a child, conceived after an injury to his or her parent, to bring a loss of consortium claim. When Ohio courts have limited the rights of a spouse who was not married at the time of the injury to pursue a consortium claim, it certainly follows that the rights of a child not yet in existence at the time of the injury would face similar limitation. <u>Anderson v. Brush-Wellman, Inc.</u>, 77 Ohio App. 3d 657, 603 N.E.2d 284 (1991). Moreover, the Court finds well-taken Defendants' argument that because loss of consortium claims accrue when the claimant learns of the loss, allowing post-conceived children to bring such claims could amount to limitless future liability. For all of these reasons, the Court GRANTS Kraft's Motion for Summary Judgment on C.A.C.'s claims for loss of consortium (doc. 96).

**D.  Defendant Ingram's Motion for Summary Judgment (doc. 101)**

Defendant Ingram Barge argues first that Clark is not a seaman, for all the reasons raised by CGB in its motion (doc. 101). Ingram argues next that even if Clark is a seaman, he cannot pursue a claim for unseaworthiness against Ingram because he was not the member of a crew of any Ingram vessel (<u>Id</u>.). Should the Court determine that Clark may pursue a claim for unseaworthiness, Ingram argues Plaintiffs cannot establish any unseaworthy condition that

21

proximately caused or substantially contributed to his injury (Id.). Ingram argues Plaintiffs' claims are only based on allegations, but there is no evidence of unseaworthiness (Id.). Finally, Ingram argues that Plaintiffs' claims for loss of consortium against Ingram are not recognized under general maritime law (Id. citing the "uniformity principle" in Miles v. Apex Marine Corp., 498 U.S. 19 (1990)).

Plaintiffs respond that Clark is a seaman and he can pursue a claim for unseaworthiness against Ingram, because he need not be a member of the barge crew to maintain a claim (doc. 107). The determinative factor, argues Plaintiffs, is whether a seaman has a requisite connection to vessels in navigation (Id.). Defendant Ingram knew, argues Plaintiffs, that its vessels would be under the complete control of CGB—and when the owner of a vessel charters out its vessel to another, the owner of the vessel remains liable for any unseaworthy conditions that pre-exist the charter (Id.). Under this principle, argue Plaintiffs, Ingram remains liable for any unseaworthy conditions that pre-exist its contract with CGB (Id.).

Plaintiffs argue that whether or not a vessel is unseaworthy is usually a finding of fact and summary judgment is only mandated "where the facts and the law will reasonably support only one conclusion" (Id.). Here, Plaintiffs argue the rigging attached to the bow of the barge was unseaworthy because of ratty

22

and kinked rigging in the path of Mr. Clark's work (Id.). Plaintiffs argue there is ample circumstantial evidence that Clark was dragging a cable up the cell tower and that it caught on the kinked rigging and jerked him backwards (Id. citing Michalic v. Cleveland Tankers, Inc., 364 U.S. 325, 329-30 (1960)).  In the alternative, Plaintiffs argue that if a jury does not find him to be a seaman, Ingram is liable under the LHWCA for breaching its "turnover duties" of safe condition and duty to warn (Id.).

In reply, Ingram argues Plaintiffs' claim for unseaworthiness has evolved–first it was based on allegedly rusty grain doors on the barge, while now it is based on allegedly "ratty uncoiled stationary rigging" (doc. 107).  Ingram argues that Plaintiffs apparently base this theory on offhand remarks made about photographs of cables and rigging after they had all been moved subsequent to the accident (Id.).  The post-accident photos, argue Ingram, are not probative of the condition of the cables at or before the time of Plaintiff's fall (Id.).  Ingram argues that neither Clark, nor Ricky Fleck, who worked with Clark on the barge the day of the accident, noticed any problems with the rigging (Id.).  Finally, Ingram argues that Plaintiffs are silent in their response regarding the viability of their loss of consortium claims (Id.).

Having reviewed this matter, the Court does not find Ingram's motion well-taken.  For the reasons articulated in its

23

analysis of CGB's motion for summary judgment, the Court has already determined that a jury could find Mr. Clark qualifies as a seaman.  The Court flatly rejects Ingram's argument that "a claim that a vessel is unseaworthy may only be asserted by a member of that vessel's crew."  The Supreme Court has explicitly stated that "the absolute right to a seaworthy ship extends to members of the ship's company and also to others aboard ship doing seaman's work and incurring a seaman's hazards." Kermarac v. Compagnie Generale Transatlantique, 358 U.S. 625, 629-32 & note 9 (1959).  The basic question is therefore whether Plaintiffs have proffered sufficient evidence such that a jury could find Ingram's barge unseaworthy. Plaintiffs proffer photographic evidence that Ingram's rigging was ratted and kinked.  Although Ingram argues Plaintiffs' theory is completely speculative that such rigging may have snagged the winch cable Mr. Clark was replacing at the time of his fall, the Court finds well-taken Plaintiffs' argument under Michalic v. Cleveland Tankers, Inc., 364 U.S. 325, 329-30 (1960) that the circumstantial evidence here precludes summary judgment for Ingram.  The photographs are not speculative and a jury can evaluate them.

The Court further finds that should a jury find that Mr. Clark is not a seaman, but rather a longshoreman, Plaintiffs still may assert claims under 33 U.S.C. § 933, based on theories that Ingram breached its turnover duties. As indicated above, the Court finds adequate evidence of problems with the condition and

24

placement of the rigging on the barge to raise a genuine issue of fact as to whether Ingram turned over control of its barge to CGB in a safe condition.

Finally, the Court rejects Ingram's arguments that Plaintiffs may not pursue their loss of consortium claims.  The Court finds overly expansive Ingram's application of Miles v. Apex Marine Corp., 498 U.S. 19 (1990), in which the Supreme Court found that non-pecuniary losses were not recoverable in a general maritime law action against a seaman's employer for the seaman's wrongful death, because such a recovery would be inconsistent with damages recoverable under the Death on High Seas Act, now codified at 46 U.S.C. § 30301, or under the Jones Act.  The Miles opinion did not address an action by a seaman against a non-employer third-party tortfeasor, such as Ingram.  See In the Matter of: Denet Towing Service, Inc. as Owner of the M/V Jerrold Jr., Praying for Exoneration from or Limitation of Liability, No. 98-1523 C/W 98-1583, 1999 U.S. Dist. LEXIS 8058 *9 (E.D. La, May 21, 1999) citing 2 Benedict on Admiralty § 81e[1], n.17 and accompanying text; Robert Force, The Curse of Miles v. Apex Marine Corp.: The Mischief of Seeking "Uniformity" and "Legislative Intent" in Maritime Tort Cases, 55 La. Law Rev. 745, 754 (1995); Rebstock v. Sonat Offshore Drilling, 764 F. Supp. 75 (E.D. La 1991), Gerdes v. G & H Towing Co., 967 F. Supp. 943 (S.D. Tex. 1997), Sugden v. Puget Sound Tug & Barge Co., 796 F. Supp 455 (W.D. Wash. 1992), Emery v. Rock

25

<u>Island Boatworks</u>, 847 F. Supp. 114 (C.D. Ill. 1994), <u>Mussa v.</u>
<u>Cleveland Tankers, Inc</u>.,802 F. Supp. 84 (E.D. Mich. 1992).
Plaintiffs' Complaint does not seek loss of consortium damages
against Mr. Clark's employer, CGB, but only against the non-
employer Defendants, Ingram, DBI, and Kraft.  The Court finds no
basis to grant summary judgment to Ingram under its theory.

**E.   Defendant DBI's Motion for Summary Judgment (doc. 102)**

          Plaintiff alleges that he climbed the cell tower without
the protection of a safety cable, because it had retracted to the
top of the tower, and as he sought to retrieve it, he fell.  In its
motion for summary judgment, DBI, the manufacturer of the self-
retracting life-line device argues that Plaintiffs have failed to
offer any evidence of design or manufacturing defect, nor to
establish a genuine issue of material fact regarding a failure to
warn claim (doc. 102).  Defendant argues its instructions state
that "a short tag line may be required to extend or retract the
lifeline during connection or disconnection operations," and that
such instruction was adequate (<u>Id</u>.).  DBI argues Plaintiffs fail to
proffer any expert opinion or other evidence showing that any
alleged defect caused Clark to fall, as Clark was not using the
device when he fell (<u>Id</u>).  The danger of falling was open and
obvious, argues DBI, such that it had no duty to warn about tag
lines, and such that Clark's own negligence negates any failure to
warn claim (<u>Id</u>.).

Plaintiffs respond that DBI made and marketed a product designed to be anchored well above the reach of the user, without an explanation about how to safely retrieve the cable (doc. 106). Plaintiffs respond there is ample evidence such that a jury could conclude the device was defectively manufactured, designed, did not conform to representation, and that as a result, Clark was injured (Id.). Plaintiffs argue the tag line instruction was buried in the middle of a paragraph in the middle of the manual, and no such cord was included with the device, nor any picture of what a tag line might look like (Id.). As a result of this failure to warn, argue Plaintiffs, the testimony of many workers for CGB is that no one ever used a tag line, but that everyone did exactly what Clark did, they climbed up the dangerous tower (Id.).

DBI replies that its device had a tagline before Plaintiff's fall, and that Mr. Clark would have to remove it before attaching it to his safety harness (doc. 110). DBI argues its device did exactly what it was inherently designed to do: it retracted (Id.).

The Court concludes, having reviewed the respective arguments of the parties, that sufficient evidence exists so as to support DBI's liability under theories of defective design, manufacture, and failure to warn. The record shows a clear dispute as to the existence of a tagline on the device, which can only be resolved by a jury's credibility determination as to differing

27

witness testimony.  A reasonable jury could find that DBI designed a defective product, did not adequately explain how to use it safely, and such failings resulted in Mr. Clark's injury.  Whether Mr. Clark was contributorily negligent is a question that does not dispose of his claim against DBI, as such contributory fault is permitted under Ohio Rev. Code § 2315.33.  For these reasons, the Court rejects DBI's motion for summary judgment.

**F.  Conclusion**

In summary, the Court concludes that genuine issues of material fact preclude summary judgment for CGB, as a reasonable jury could find facts supporting a conclusion that Mr. Clark qualifies as a seaman under the law.  The Court further finds summary judgment inappropriate for Kraft, on its first motion for summary judgment, as a jury might find that its role involved more than making a general safety recommendation, and that its work failed to result in changes that would protect Mr. Clark.  However, the Court does not find Plaintiff C.A.C.'s claims for loss of consortium viable under Ohio law, and therefore it finds summary judgment appropriate in response to Defendant Kraft's motion.  The Court further concludes that a jury should be entitled to see Plaintiffs' evidence that Ingram's barge was allegedly unseaworthy, and to consider witness testimony about the lack of tagline on DBI's safety device.  For these reasons, summary judgment is inappropriate for Defendants Ingram and DBI.

28

Accordingly, the Court DENIES Consolidated Grain and Barge Company's Motion for Summary Judgment (doc. 70), DENIES W & M Kraft, Inc.'s Motion for Summary Judgment (doc. 59), GRANTS W & M Kraft, Inc.'s Motion for Summary Judgment on C.A.C.'s Loss of Consortium Claim (doc. 96), DISMISSES C.A.C. as a Plaintiff in this action, DENIES Ingram Barge Company's Motion for Summary Judgment (doc. 101), and DENIES DB Industries, Inc.'s Motion for Summary Judgment (doc. 102).  The Court further SETS this matter for final pretrial conference on January 25, 2007, at 2
:00 P.M., VACATES the February 6, 2007 trial date, and RESETS the two-week jury trial in this matter for February 20, 2007, on an on-deck basis.


SO ORDERED.


Dated: January 10, 2007         /s/ S. Arthur Spiegel

                                S. Arthur Spiegel

                                United States Senior District Judge