UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

CHARLES CLARK, et al.,          :
                                :   NO. 1:05-CV-00725
          Plaintiffs,           :
                                :
     v.                         :
                                :   **OPINION AND ORDER**
W & M KRAFT, Inc., et al.,      :
                                :
          Defendants.           :


          This matter is before the Court on Plaintiffs' Motion for
a New Trial (doc. 267), DB Industries, Inc.'s Response in
Opposition (docs. 275), W & M Kraft, Inc.'s Response in Opposition
(doc. 279), Ingram Barge Company's Response in Opposition (doc.
280), Consolidated Grain and Barge Co.'s Response in Opposition
(doc. 283), and DB Industries, Inc.'s Motion to Strike Plaintiffs'
Motion for a New Trial (doc. 281). Plaintiffs filed a Combined
Reply Memorandum in Support of their Motion for a New Trial and
Response in Opposition to DB Industries' Motion to Strike (doc.
284). DB Industries, Inc. filed a Reply in Support of its Motion
to Strike (doc. 286).

          For the reasons indicated herein, the Court DENIES both
Plaintiffs' Motion for a New Trial and DB Industries' Motion to
Strike.

**I.  Background**

          This case involves indisputably tragic and severe
injuries to Plaintiff after he fell from a "cell tower" on December

16, 2004, while employed by Defendant Consolidated Grain and Barge ("CGB"). The trial of this matter, which commenced on June 5, 2007, put before the Jury questions of Plaintiff Charles Clark's status as a longshoreman or seaman; Plaintiffs' claims of negligence against Defendants CGB, W & M Kraft ("Kraft"), DB Industries, Inc. ("DBI"), and Ingram Barge Company ("Ingram"); and the question of the extent of Plaintiffs' damages. On June 20, 2007, after an extremely well-briefed, well-tried, and well-argued trial, the Jury entered its responses to interrogatories (doc. 259). The Jury found that Plaintiffs did not establish by a preponderance of the evidence that Charles Clark had a substantial connection to a vessel or identifiable fleet in navigation, a finding that established his status as a longshoreman, and that thus eliminated his ability to seek negligence damages against CGB under the Jones Act. Chandris v. Latsis, 515 U.S. 347, 355-56 (1995), Peterson v. Chesapeake and Ohio Ry. Co., 784 F.2d 732, 738 (6th Cir. 1986). The Jury further apportioned eighty percent of the negligence causing Mr. Clark's injuries to Mr. Clark himself, twenty percent to CGB, while finding no liability for the remaining Defendants Kraft, DBI, and Ingram. Finally, the Jury assessed Mr. Clark's damages to total $11,154,988.00.

In their motion for a new trial, Plaintiffs argue the Jury's negligence verdict in this case was clearly swayed by the Court's erroneous admission of prejudicial information regarding

2

Mr. Clark's past, such that a new trial on all issues is required (doc. 267). Each of the Defendants argue Plaintiffs' motion should be denied, arguing the Jury's verdict is supported by substantial evidence (docs. 275, 279, 280, 283). Defendant DBI also filed a motion to strike Plaintiffs' Motion for a New Trial, arguing Plaintiffs failed to file it within the requisite ten days under Fed. R. Civ. P. 59(b) (doc. 281). The Court shall address DBI's motion to strike as an initial matter, and then proceed to Plaintiffs' motion.

## II.  DBI's Motion to Strike

All of the Defendants oppose Plaintiffs' Motion for a New Trial as untimely (docs. 275, 279, 280, 283), while DBI filed a separate Motion to Strike premised on the same arguments (doc. 281). DBI argues that Plaintiffs filed the motion for a new trial three days too late, and therefore the Court should strike it as untimely filed (doc. 281).

Plaintiffs respond that the Clerk never filed the entry of judgment under Fed. R. Civ. P. 58(a)(2)(A)(iii) triggering the Rule 59 ten-day clock (doc. 284). Plaintiffs attach to their response examples of separate filings of judgment entries made by clerks in various other cases they have litigated in this district and before this Court (Id.). DBI replied that Plaintiffs misread Rule 58 and that the Clerk's entry of the court's signed "Final Judgment" on June 29, 2007 comported with Rule 58(a)(2)(B)(i) (doc.

286).

Having reviewed this matter, and applicable precedent, the Court finds well-taken the argument that the Clerk's entry of its judgment comported with Rule 58(a)(2)(B)(i).  The operation of the Rule 59 ten-day time limit is strictly construed, and district courts have little discretion in enlarging the time to file an untimely Rule 59 motion.   Fed. R. Civ. P. 6(b).   However, the Court is compelled in this case to reach the merits of Plaintiffs' Motion, in the event that Plaintiffs choose to appeal, as they have the right to do, within thirty days of this Court's September 14, 2007 disposition of W & M Kraft's Motion to Alter or Amend.  Fed. R. App. P. 4 (a)(4)(A).  No Defendant is prejudiced by the Court's decision to reach Plaintiffs' motion, as such motion for a new trial is denied.   Therefore, out of an abundance of caution, with regard to the unique complexity of this case and the potential for an appeal, the Court is compelled to deny DBI's motion to strike and the arguments of all the parties regarding the untimeliness of Plaintiffs' motion.

## III.  Plaintiffs' Motion for a New Trial

### A.  Plaintiffs' Position

Plaintiffs argue that over their repeated objections, the Court abandoned its gatekeeping function, and allowed the Jury to hear highly prejudicial evidence regarding Plaintiff's prior drug use, his previous "bad acts," and other information regarding his

4

allegedly reckless character (doc. 267).  Plaintiffs specifically challenge the admission of the testimony and expert report of Dr. Granacher, who opined that thirty percent of Mr. Clark's brain injury could be attributed to drug and alcohol abuse prior to the accident (<u>Id</u>.).  Shortly before the trial, Plaintiffs filed two liminal motions, one bringing a <u>Daubert</u> challenge to the admissibility of Dr. Granacher's opinion (doc. 181), and a second to exclude evidence relating to Mr. Clark's past physical injuries and substance abuse (doc. 192).  The Court ultimately denied a <u>Daubert</u> hearing to Plaintiffs, but stated it would allow voir dire of Dr. Granacher, and determined the Jury could decide what weight to give his testimony.

In Plaintiffs' view, the Jury was so inflamed against them by the admission of evidence of Mr. Clark's past acts, that it attributed to Mr. Clark 80% of the fault for his injuries, against the weight of the evidence (doc. 267).  As the Jury's verdict was so at odds with the evidence, Plaintiffs argue, there can be no assurance that the entire outcome of the trial was not also affected by the inflammatory information about Mr. Clark (<u>Id</u>. <u>citing</u> <u>Mike's Train House, Inc. v. Lionel, L.L.C.</u>, 472 F.3d 398, 405 (6th Cir. 2006), <u>Nemir v. Mitsubishi Motors Corp.</u>, 381 F.3d 540, 559 (6th Cir. 2004)("erroneous evidentiary rulings pertaining to one question [have] the potential to affect the jury's resolution of the other[s]")).  Consequently, argue Plaintiffs, justice requires

the Court order a new trial (Id. citing O'Neal v. McAninch, 513 U.S. 432, 436 (1995).

### B. Defendants' Responses

DBI argues in its opposition that the Court may only set aside the verdict and grant a new trial if it believes the verdict is against the manifest weight of the evidence, damages are excessive, or the trial was unfair to the moving party in some fashion (doc. 281, citing J.C. Wykoff & Assoc. v. Standard Fire Ins. Co., 939 F.2d 1474, 1487 (6th Cir. 1991)). In this case, DBI argues Plaintiffs' counsel opened the door to evidence regarding Mr. Clark's prior bad acts, alcohol and drug use, and criminal convictions during opening statements (Id., citing United States v. Magallanez, 408 F.3d 672, 678 (10th Cir. 2005)("It is widely recognized that a party who raises a subject in an opening statement 'opens the door' to admission of evidence on that same subject by the opposing party."). DBI argues therefore that even if the admission of such evidence was erroneous, Plaintiffs' counsel "invited" such error, and are without basis to challenge the validity of the trial based on such evidence (Id.).

DBI next argues that Plaintiffs declined to challenge Dr. Granacher's qualifications during trial and never moved to strike his testimony (Id.). DBI contends that Plaintiffs ask for different treatment of Dr. Granacher's expert report, from that the Court gave to Plaintiffs' expert reports (Id.). Finally, DBI

argues that Plaintiffs do not challenge the Jury's verdict that DBI was not liable (<u>Id</u>.).

The responses of the other Defendants essentially mirror that of DBI.  Kraft argues the Jury's attribution of eighty percent negligence to Mr. Clark is supported by CGB employee Scott Thibaut's testimony that Mr. Clark disregarded "SLAM" safety training when he decided to climb the cell tower without fall protection (doc. 279).  Kraft further argues that Dr. Granacher's testimony was relevant to the calculation of damages in the case (<u>Id</u>.).  Ingram argues that the Jury had many reasons to disbelieve Clint Ellis, the principle witness against it, and that Mr. Clark's own testimony supported a finding that he was aware of the hazards of any spilled grain, and knew the importance of watching for it (doc. 280).  Ingram further argues that accepting Plaintiffs' contention that an inflamed Jury retaliated against them would defy logic (<u>Id</u>.).  In Ingram's view, one could not logically justify the Jury's award of $11.2 million in damages, and would have to believe the Jury calculated the legal consequences of their determination of Mr. Clark's status as a longshoreman so as to "retaliate" against Mr. Clark (<u>Id</u>.).  Finally, Ingram argues that Dr. Granacher's expert opinion satisfies both the reliability and relevance requirements of <u>Daubert</u> (<u>Id</u>.).

CGB argues that Plaintiffs presented the testimony of two witnesses, Paul Spradlin and Clint Ellis, on the question of seaman

status (doc. 283). CGB argues the Jury was entirely reasonable to conclude that neither witness spent enough time with Mr. Clark to opine about the amount of time Clark spent on the barges (Id.). CGB further contends the Jury chose to believe barge loading forms and its video showing that Clark's task of loading set up could be completed in just over ten minutes, rather than believing the testimony of Ellis that loading took considerably longer (Id.).

### C. **Plaintiffs' Reply**

Plaintiffs reply that Defendants oppose their Motion with a barrage of procedural arguments, but fail to demonstrate the harmlessness of the admission of Dr. Granacher's opinions (doc. 284). Plaintiffs argue they did not "open the door" to the admission of Dr. Granacher's testimony or report because lawyer statements are not evidence, and at no time did Plaintiffs introduce evidence of Mr. Clark's past (Id.). Plaintiffs argue the Court's admission of the reports of their experts is not comparable to the admission of Dr. Granacher's report due to Plaintiffs' extensive objections (Id.).

Plaintiffs further reiterate that the admission of Dr. Granacher's report and his trial testimony were not harmless errors (Id.). If error is found, Plaintiffs contend, the Court's inquiry is "Do I, the judge, think that the error substantially influenced the jury's decision?" (Id. quoting O'Neal v. McAninch. 513 U.S. 432, 436 (1995)). Should the Court have doubts about the effect of

8

an error, Plaintiffs argue the Court must resolve such doubts by presuming the error injuriously affected the Jury's verdict (Id.). Finally, Plaintiffs argue that Defendants have not met their burden of demonstrating the admission of Dr. Granacher's report and testimony were harmless (Id.). Plaintiffs repeat their view that the Jury's apportionment of eighty percent of fault to Mr. Clark is unsupported by the evidentiary record, and such apportionment shows the admission of "bad act" information about Mr. Clark was not harmless.

### D. Analysis

Having reviewed this matter, the Court is unswayed by the various procedural arguments raised by Defendants, and is compelled to reach what it views as the heart of the matter. The Court is convinced that even if it did err in admitting the testimony and report of Dr. Granacher, the pivotal question put before the Jury was that of Plaintiff Mr. Clark's status as either a seaman or a longshoreman. The Court cannot see a logical relationship between any inflammatory information about Mr. Clark and the Jury's determination that he lacked an adequately substantial connection to a vessel or a fleet of vessels to qualify as a seaman. There was evidence in the record to support the arguments of both parties as to the amount of time Mr. Clark spent on the barges in the context of his employment. The Jury had to decide what weight to accord to the testimony of Paul Spradlin and Clint Ellis, as

opposed to barge loading forms and CGB's video. The Jury apparently opted to grant more weight to the latter. The Jury's ultimate determination qualified Mr. Clark as a longshoreman, which worked in favor of CGB. The Jury further made negligence findings as to the other Defendants which the Court cannot find as contrary to the manifest weight of the evidence.

The Court therefore asks the question posed by Plaintiffs: "Do I, the judge, think that the error substantially influenced the jury's decision?" O'Neal v. McAninch. 513 U.S. 432, 436 (1995), and responds in the negative. Even if the Jury was "inflamed" to some degree, as evidenced by its attribution of the majority of the negligence to Mr. Clark, such decision had no logical bearing as to Mr. Clark's status. Moreover, the fact that the Jury methodically calculated damages amounts, based in great part on Plaintiffs' evidence, belies the notion that it harbored unfair bias against Mr. Clark based on his past.

The question of Clark's longshoreman status controls. Even had the Jury found CGB completely responsible for Mr. Clark's fall from the cell tower, by operation of law, the Jury's finding that Clark was a longshoreman relieved CGB of liability for claims of Jones Act negligence. Chandris, 515 U.S. 347, 355-256. This legal reality of mutually exclusive remedies is one fixed by Congress, not this Court, or the Jury. 33 U.S.C. § 902(3)(G).

In the Court's view, the Jury certainly could have come

10

to conclusions favoring Plaintiffs, as the Court already opined in denying Defendants' various motions for directed verdict at the close of trial, and in denying Defendants summary judgment.  But a reasonable jury could also come to conclusions adverse to Plaintiffs, as in actuality this Jury did.

The Jury's verdict resulted in a harsh outcome for Plaintiffs, after a hard-fought legal battle.  The Court is further acutely cognizant of the heartbreaking reality presented by Plaintiffs' injuries.  However, the Court is constrained to defer to the Jury as fact-finder, when it is unconvinced that prejudicial error affected the ultimate outcome on the key question of Mr. Clark's status.  Consequently, the Court finds no basis to grant Plaintiffs a new trial pursuant to Fed. R. Civ. P. 59(a).

## IV.  Conclusion

For the reasons indicated herein, the Court DENIES Plaintiffs' Motion for a New Trial (doc. 267), and DENIES DB Industries, Inc.'s Motion to Strike Plaintiffs' Motion for a New Trial (doc. 281).

SO ORDERED.


Dated: September 26, 2007     /s/ S. Arthur Spiegel
                              S. Arthur Spiegel
                              United States Senior District Judge


11